Good morning. I would like to reserve five minutes of my time for rebuttal. I am Lisa Pickering, representing the Trejo family. May it please the Court, at the heart of this case is a simple issue. An attorney was paid to represent a respondent to file an appeal at the Board of Immigration Appeals, took that money, and failed to file an appeal. On its face, this is a case where counsel was clearly ineffective, because the attorney did not act with sufficient competency, and the petitioners were harmed by his lack of action. Are you acknowledging that the Lozada factors, or at least some of them, were not met, and that you're going to maintain this was plainly ineffective on its face? It is plainly ineffective on its face, and I think the only factor of Lozada that was not met was the affidavit from the respondent. What about the bar complaint? There was a certified mail receipt submitted showing that a complaint was mailed to the state bar. So counsel has showed that something was mailed to the state bar. What's inside this folder? Counsel? We don't know. So what do we know about what was in that file? He shows a picture of a supposedly a bar complaint, but we don't know what that is. That is true, but I don't know what you would mail to the state bar office, the address that has to take bar complaints if it's not a complaint. I guess there's obviously issues with the Lozada factors. We have to get through that. What's the argument that it's plainly ineffective on its face? He did not. He signed a contract. He took the money, and he didn't file the appeal. And he acknowledges he didn't file the appeal because he refunded all the money two weeks later when she went to his office and said, what happened with my appeal? What do we make of the letter that she signed saying, you know, in effect that she hadn't provided her alien number to the lawyer? Your argument, I guess, is that was signed under some kind of duress. I would say that it was prepared by the lawyer's office in an attempt to cover up or acknowledge, cover the fact that they had not filed the appeal, but also any competent immigration attorney that has five offices throughout the state would either not take a case without knowing a client's A number or could ascertain that A number within about ten minutes. It's not a complicated issue to know what a person's A number is. Also, the attorney, Mr. Taylor, who initially represented her at her trial, stated and presented a letter saying that this attorney had not contacted them until that day, December 16th, two weeks after the deadline had already passed to request a copy of the file. That's, again, something that you would do the first day that you sign a contract with a client. You take their money. You would not sign a contract with someone without knowing what you were going to do. And you can't do anything in immigration law without knowing someone's alien number. And that alien number is on every piece of paper that the respondent would have. So for the attorney to put the blame on the respondent and say, you didn't provide the alien number, it's like saying, you didn't tell me what your name was. Did you ask what your name was? Did you ask what their alien number is? These are very basic first day of practicing law questions. What is your alien number? We don't know from the record what happened. I mean, it's possible the attorney asked, can you provide the file's information and the person said, I'll get it to you, I'll get it to you, and that never happened. I guess we just don't know from record before us. We don't know. We have the letter from the respondent saying that she contacted the office multiple times asking what the status is and was never able to get in touch with either this attorney or the paralegal that she had met with at the case. But why isn't the bar complaining in the record? Just back to Judge Mendoza's question. I don't know. Have you seen it? Does it exist? I don't have a copy of it. And do you know why the affidavit was never filed again? It seems to be pretty easy to do if the facts are as you say they are. I think the attorneys who were trying to help in the Board of Immigration Appeals were trying to do this as quickly as possible to try to show an effort to acknowledge that this happened, that they wanted to file a motion for late appeal. The Ninth Circuit has also acknowledged that there's a presumption of ineffective assistance of counsel by failing to file an appeal. So that's in Derringer v. Reno. So on its face there was a presumption in this case that there was ineffective assistance because the appeal was not filed. Let me ask you this. Just so that I'm clear, what is then your relationship with Mr. Geschkehi? Because he's the one that filed this motion, correct? Yes. And so you were hired on from his firm? I have my own immigration firm, but I took on to do the oral argument because he doesn't do oral arguments. Okay. Well, Mr. Geschkehi must know Maricol Sada, correct? Yes. And he must know that there needs to be an affidavit filed, correct? Yes. And that was not done? Counsel, was that done? That was not done. And since he knows Maricol Sada, he knows that a bar complaint needs to be filed, and he sent us a picture of one. And you right now don't have a copy of that bar complaint, correct? I do not. And he and you would know that in order to comply with Maricol Sada, we would need that, correct? Correct. When the ineffective assistance account flow is not plain on its face as it was here. So we don't have those things. So what do we do? Let me ask you this question. What do we do when perhaps the lawyers that are on appeal themselves are ineffective? What do we do? Because it's plain, isn't it? Mr. Goschkehi? No, because I think that substantial compliance with Lazada was met here, that there's evidence that two of the three prongs of Lazada were met, and that the failure to file the appeal was plain on its face. What did happen going forward? The record is spare right now. Perhaps it could be supplemented. If you're able to do that, then what? Could you continue to pursue relief on behalf of this family? Yes. If the notice of appeal was accepted by the Board of Immigration Appeals, then there would be a briefing schedule issued, and they could file the appeal of the immigration judge's decision denying asylum. Is there underlying merit to the underlying claim here? Yes, there's merit to the underlying claim. It's an asylum where she claims that she had been harmed and would suffer future harm. I don't necessarily have the transcript because it was not prepared for this appeal, but it is a non-frivolous appeal of a denial of asylum. As I understand, I think her husband was a police officer and had been threatened and whatnot from some of the gang members or something of that nature. Yes, so it's a non-frivolous appeal that she could have pursued. Thank you. I'll save my time for rebuttal if no further questions. Thank you. May it please the Court, my name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. Your Honors, the only issue before this Court is whether Petitioner identified an error of law or fact in the Board's decision denying her motion to accept her untimely appeal, and the answer to that question is no. The Board found in its decision denying Petitioner's motion to accept her untimely appeal because she failed to comply with two out of the three Lizada factors and because IAC was not playing on the face of the record. Not playing on the face. I mean, how many lawyers does a person need to hire to file a notice of appeal? How many lawyers does that take for, apparently, because that's what it took here and still not complied? Understandably, and it's admitted that Attorney Siderman did not file the appeal, but the failure to file an appeal in and of itself is not necessarily the result of IAC. There can be numerous reasons why an appeal is not filed. It could be for strategy reasons. It could be because Petitioner ended up not giving, like, here's certain information or because there was communication breakdowns or just a whole host of reasons, and here all we have is a record that is. Counsel, just acknowledge that it takes about ten minutes to find someone's A number, and I've never practiced immigration law, but if I practiced immigration law, I would know that, and clearly someone with five offices or however many offices they have would know that information. Counsel, why isn't that something that they could have done, then submitted a notice of appeal, gotten the file, and filed that notice of appeal in a matter of minutes? I don't know, but it's more than just an A number. You also need a lawyer report decision and a file so you can, in the notice of appeal, identify the errors in the immigration decision, and without an affidavit, we don't know what happened. Petitioner had two opportunities to file an affidavit and say, this is what my agreement was with counsel. This is what he represented to me. This is what I understood our agreement to mean, and these are the facts known to me. She never did that. She had two opportunities to do so, and all we have is that record or the letter that Petitioner signed saying that no appeal was filed, that she acknowledged no appeal was filed because she didn't provide an A number. But I mean, that's why the BIA doesn't pose these requirements, because it's really hard to talk about this in the abstract. There's pieces of this that seem like something went wrong and shouldn't have happened and there should have been a notice of appeal filed. On the other hand, all we have is a letter which says somebody didn't provide some required information. Petitioner has now gone through four or five lawyers, and that itself is suspect, and so I don't know, sitting here, why this happened. That's the point of the Lozada factor is to try to bring some grounding to this. Exactly. The purpose is to weed out frivolous complaints from non-frivolous complaints. And, I mean, again, the affidavit requirement is arguably the easiest Lozada requirement to comply with, and Petitioner had two opportunities to do so. I can see this requirement notwithstanding the fact that it would seem easy. And so that tells me that there's probably some reason that petitioners in this situation find it difficult. I mean, sometimes it's IAC, it's a plan, face of the record. Here it's not. Other times there's substantial compliance where maybe one or two of the Lozada problems are complied with when there's other evidence in the record that, you know, meets the policy goals for why Lozada was decided. And here none of that exists. This council is, let me ask the question that I asked the other council, which is, what if the current council and their representation is also extremely deficient? They clearly know what the Lozada factors are. They clearly know what needs to be filed. Everyone who practices in this area knows what needs to be met, and that was not done. What do we do in situations where even the council that is presenting the case is ineffective? What do we do for these people that paid, again, several attorneys now just to file a notice of appeal, and that doesn't get done? What do we do when it seems to be plain? I mean, the answer to that is twofold. I would say if you're saying that the current council who wrote the appeal brief and was representing Petitioner on the motion, if he was ineffective by not complying or having Petitioner comply with Lozada, then I would say that Petitioner now is on notice through this argument that potentially that council's performance was ineffective and that she would be on notice and would have to, unfortunately, file another motion to reopen with the board, complying with Lozada, setting forth the facts, and writing a letter to the council saying why she thought she was deficient in filing a bar complaint with the appropriate authorities. But in terms of this PFR, the only question is whether at the time the motion to accept Petitioner's late appeal was filed, whether there was error in that decision, and the answer to that question is no. What do we make of this letter from Mr. Siderman? Do you remember the one she signed? I guess he drafted it. I mean, I would say that those types of letters are routine, that attorney's routine. We write contemporaneous notes of what transpired during a meeting, especially one in which a retainer was refunded and there's an acknowledgement that no appeal was filed. Petitioner signed it, seemingly agreeing with its contents. And, I mean, it was, I would say it was routinely made for the purpose of her client file with Attorney Siderman. And that's the only evidence we have that Petitioner herself submitted in support of her IAC claim. And it suggests that Petitioner didn't do the things she was supposed to do to have. So we all know what happened here, right? We all know what happened. What happened here is she goes back and says, where's my appeal? Why wasn't it filed? And I said, well, I want my money back. And he's like, well, you're getting your money back, but I need you to sign this document right here. Sign this document, prepare it, and there you go. And she, like many immigrants in her exact situation, wants that money so that they can go out and hire another attorney, which she promptly did, to again end up in the same sort of situation. That's really what happened here, isn't it? No, I disagree. I mean, that's just conjecture right now. We don't know what happened. Again, if Petitioner filed an affidavit saying all those things, then there would be something to talk about. But she didn't. And absent that, she doesn't meet Lozada's procedural requirements, and it's a high bar to pass Lozada's requirements for that reason. You can't just say no appeal was filed, and therefore I have an IAC claim. You need to do more than that. I just want to interrupt. Petitioner here was quite proactive. She repeatedly changed attorneys when she was dissatisfied with her counsel's performance. Doesn't that suggest that it was really the lawyer's fault here? It wasn't that she refused to provide information to her lawyer, VA number, et cetera? It's more like the lawyers just dropped the ball repeatedly. I mean, due diligence is one problem, and, I mean, it seems like she was diligent in pursuing her claim, but Lozada is the other problem. And, I mean, the question here is whether those requirements were met, and they were not, and whether IAC is playing on the face of the record. And on the record we have, it's in the government's opinion that IAC is not playing on the face of the record. Does the BIA have any kind of, you know, evaluation of attorneys? I mean, obviously the bar has its own. We have our own. But does the BIA conduct any review of the lawyers that appeared before it? I do not know the answer to that question. I know, I don't know the answer to that question. I'm sure there's something in place, and I think they do rely on, you know, complaints from other attorneys or from notice from our institutions or from clients, but I don't know what the exact mechanism is for them vetting or, you know, grading counsel. I don't know. To Judge Bress's question, I mean, I have found that there is definitely concern in this area of the bar, and we see that in the hundreds of appeals that we see, and we see a pattern. Excuse me. I'm not going to speak for everyone. I'm speaking for myself. That is something that I have noticed. And so it's definitely a concern, so I'd be interested in seeing what is out there on this particular point. I mean, I can try to get an answer to that question and, you know, file something supplemental with the court in an attempt to answer that. But I don't know that off the top of my head. But, no, I do agree that the immigration bar is sometimes ineffective, and you also have clients who, you know, it's difficult to pay money, it's difficult to show for appointments for whatever reason, and it's both those things. But in the case here, the ineffective assistance is not plain on the face. Like I said, again, there are numerous reasons why an appeal may not be filed, and the failure to file an appeal in and of itself does not necessarily mean that it was the product of ineffective assistance. And, I mean, the WSAT requirements are there for a reason. And, again, an affidavit is a really easy thing to do, and Petitioner had two opportunities to just write her version of what happened down, and she never did. And it's her burden to do that, and she failed to do so. Who would have told you that? Current counsel. But, again, unfortunately, then she may now be on notice of another IAC claim. And it's unfortunate that that's the circumstance that she's in, but the court can't do anything in relation to that without her making a claim against counsel, if that's the case. Under the substantial compliance with WSATA standard, if she had filed an affidavit, would that be sufficient, even if we didn't have the bar complaint? It could be. It could not be. She still didn't have a bar complaint. And then the notice to counsel informing him of the allegations against him, there's no evidence that it was even mailed to him, so we don't even know that he was on notice of the allegations against him. Well, the PI established that, right? They didn't specifically address it, but they didn't fault the district for not complying with that requirement. So they could find substantial or perhaps not, given the other lacking evidentiary deficiencies with WSATA's requirements. If there's no more questions, I'm happy to wrestle the brief. Great. Thank you. Just briefly, if there are any additional questions for Riddell. With respect to the bar complaint, is there any way you could get whatever was submitted from the state bar? Yes, I could get a copy of that. Was that done here before? Because I know you just had the envelope that something was mailed, but is there any way you can actually – is there anything in the record or that the attempt was made? Mr. Gachigai has a copy, or the respondent would have a copy, I assume, of what she mailed to the bar, but I do not have a copy of it today. Was that provided to the PI, though? I believe all that was provided was the proof of mailing. I would argue, again, that this ineffective assistance of counsel is plain on its face and that there is substantial compliance with the WSATA and the board uses discretion in failing to consider the initially filed and improperly filed motion to reconsider to the board, filed by the second attorney before Mr. Gachigai. The Board of Immigration Appeals is required to consider all allegations or all motions raising ineffective assistance of counsel as a WSATA claim, as a motion to reopen, and their failing to do that in this case was an abuse of discretion. Thank you. Thank you to both counsel for the helpful arguments. We are adjourned for today. All rise. This court for this session stands adjourned.
judges: LEE, BRESS, MENDOZA